IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TAMMY ZUMWALT,**

       **Plaintiff,**

vs.                                     No. CIV 04-0959 RB/ACT

**PROPER FOODS, INC.,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's ("Proper Foods'") Motion to Dismiss (Doc. 4), filed on January 6, 2005. Having reviewed the submissions of the parties and the relevant law, the Court finds that this motion should be granted as to the New Mexico Human Rights Act claims, but otherwise denied.

**I.    Background.**

Plaintiff ("Zumwalt") was employed by Proper Foods from August 8, 2002 until March 3, 2004. (First Am. Compl. ¶ 6.) Zumwalt held the position of Human Resources Specialist until June 2003. (First Am. Compl. ¶ 7.) In June 2003, the Comptroller resigned and Zumwalt assumed the duties of Comptroller, in addition to her duties as Human Resources Specialist, with no pay increase. (First Am. Compl. ¶ 10.) On August 28, 2003, Zumwalt was officially promoted to the Comptroller position when Proper Foods hired Thomas Christie as Human Resources Specialist. (First Am. Compl. ¶ 11.)

Between June 2003 and August 28, 2003, Plaintiff learned she was pregnant and informed

her co-workers and supervisor, Kevin Bartell. (First Am. Compl. ¶ 8.) Prior to revealing her pregnancy, Zumwalt had no difficulties or complaints regarding her work as Human Resources Specialist. (First Am. Compl. ¶ 9.) During the early stages of her pregnancy, Zumwalt performed the duties of Comptroller and trained and assisted Christie with his Human Resources responsibilities. (First Am. Compl. ¶ 12.)

Bartell was supposed to help Zumwalt with the Comptroller duties while she trained Christie. (First Am. Compl. ¶ 13.) However, Bartell took actions that prevented Zumwalt from performing her own duties. (*Id.*) Specifically, Bartell changed the format of business reports and denied Zumwalt access to software and information that she needed to perform the Comptroller job. (First Am. Compl. ¶ 14.) Zumwalt complained to Christie, in accordance with Proper Foods' procedure for reporting harassment in the workplace, but no action was taken to correct Bartell's treatment of her. (First Am. Compl. ¶ 15.)

On November 18, 2003, Zumwalt met with Bartell. She told Bartell that she felt discriminated against due to her pregnancy. (First Am. Compl. ¶ 16.) The following day, Bartell told Zumwalt she should take the day off with pay to think about her situation and, later that day, a taxi driver delivered a letter from Proper Foods informing Zumwalt that she had been suspended for one week without pay for insubordination. (*Id.*)

During the suspension, Zumwalt attempted to contact John J. Johns, the president of Proper Foods, regarding the harassment. (First Am. Compl. ¶ 17.) Johns did not respond and the harassment continued. Upon her return to work after the suspension, Bartell changed Zumwalt's computer passwords and only granted her limited access to the computer system. (First Am. Compl. ¶ 18.)

On December 5, 2003, Zumwalt began her twelve week maternity leave, but she did not receive her salary during her leave. (First Am. Compl. ¶ 19.) Similarly situated male employees who were required to take time off from work for health reasons continued to receive their salary. (First Am. Compl. ¶ 20.) Upon her return from maternity leave, Bartell gave Zumwalt a written warning for taking too long to pump breast milk, despite arrangements to allow Zumwalt twenty minutes a day for this task. (First Am. Compl. ¶ 21.) Bartell's actions became so hostile and abusive that they created a hostile work environment on account of Zumwalt's gender and she was forced to resign. (First Am. Compl. ¶ 22.)

On March 4, 2002, Zumwalt filed a charge of discrimination with the EEOC. (First Am. Compl. ¶ 24.) On May 26, 2004, the EEOC issued a right to sue letter. (First Am. Compl. ¶ 25.) On August 24, 2004, Zumwalt filed her complaint in this court alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*, as amended, ("Title VII"), and the New Mexico Human Rights Act, NMSA 1978, §28-1-1, *et seq.* ("NMHRA").

**II.     Standard.**

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1336 (10th Cir. 1999).

**III.     Discussion.**

Proper Foods argues that the forced resignation allegations should be dismissed for failure to exhaust administrative remedies. Proper Foods acknowledges that Zumwalt alleged disparate treatment gender discrimination, but it asserts that she never presented a claim related to the alleged forced resignation to the EEOC.

Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of gender. *See* 42 U.S.C. § 2000e-2(a)(1) (2004). Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997) The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity to conciliate the claim. *Id.*

In her EEOC charge of discrimination, Zumwalt alleged that "I have been subjected to disparate treatment in the form of being denied insurance benefits that male employees obtain, have been reassigned additional duties without additional compensation and with disparate terms and conditions based on my sex, female." (Resp. Br. ¶ 4.) In her First Amended Complaint, Zumwalt alleged that Bartell's actions became so hostile and abusive that they created a hostile work environment on account of Zumwalt's gender and she was forced to resign. (First Am. Compl. ¶ 22.)

When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge. *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994). A claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the

charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (quotation omitted). In making the exhaustion determination, the Court must liberally construe the EEOC charge. *Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F. 2d 857, 859 (10th Cir. 1983); *Harrell v. Spangler, Inc.*, 957 F. Supp. 1215, 1219 (D. Kan. 1997).  The forced resignation would fall within the scope of administrative investigation into the alleged disparate terms and condition.  The motion should be denied as to the forced resignation allegation.

Proper Foods moves to dismiss the NMHRA claim as untimely.  In her response, Zumwalt stated that the NMHRA claim was the subject of a stipulated order of dismissal and that no further response would be made.  Although no stipulated order of dismissal has been received, the NMHRA claim should be dismissed because Zumwalt did not oppose the motion with respect to those claims. *See* D. N. M. LR-Civ. 7.1(b). The motion will be granted with respect to the NMHRA claim.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 4), filed on January 6, 2005, is **GRANTED AS TO THE NMHRA CLAIM, BUT OTHERWISE DENIED.**

　

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**